**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **SHARON L. DRAKE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | No. 11-2554-STA-cgc |
| | ) | |
| **BIO-MEDICAL APPLICATIONS OF** | ) | |
| **TENNESSEE, INC., an affiliate of FRESENIUS** | ) | |
| **MEDICAL CARE HOLDINGS, INC., d/b/a** | ) | |
| **FRESENIUS MEDICAL CARE NORTH** | ) | |
| **AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT AND**
**GRANTING DEFENDANT'S MOTION TO DISMISS**

Before the Court is Plaintiff's Motion to Amend the Complaint (D.E. # 12), filed on

January 31, 2012.[1] Defendant filed a Response (D.E. # 16) on February 14, 2012. Also before

the Court is Defendant's Motion to Dismiss (D.E. # 4), filed on July 8, 2011. Plaintiff filed a

Response to Defendant's Motion (D.E. # 9) on August 12, 2011. Defendant filed a Reply to

Plaintiff's Response (D.E. # 10) on August 25, 2011. For the reasons set forth below, Plaintiff's

Motion to Amend the Complaint is **DENIED**, and Defendant's Motion to Dismiss is

**GRANTED**.

---

[1]     Plaintiff's counsel improperly filed the Motion to Amend at D.E. # 12 and 14, as
they were filed horizontally. Plaintiff's counsel's vertically filed Motion to Amend can be found
at D.E. # 15, and the Court will cite to the pages found in D.E. # 15 throughout this order.
However, the Court finds that Plaintiff first moved to amend her Complaint at D.E. # 12 on
January 31, 2012.

## BACKGROUND

Plaintiff filed her Complaint in Shelby County Circuit Court on May 31, 2011. (D.E. # 1-2.) Defendant removed the case to this Court on July 1, 2011. (D.E. # 1.) One week after removal, Defendant filed the Motion to Dismiss now before the Court. The following facts are taken as true for purposes of this Motion and are found in Plaintiff's original Complaint.

On or about February 23, 2010, Plaintiff was employed by Defendant as a team leader registered nurse at its dialysis clinic in Memphis, Tennessee. (Compl. ¶ 4.) On March 22, 2010, "during her employment with [Defendant] . . . [and in] the scope of her duties," Plaintiff noticed another nurse employed by Defendant performing a sternal rub on one of the other nurse's dialysis patients. (*Id.* ¶ 5.) Plaintiff observed the patient to be unresponsive. (*Id.*) While Plaintiff was administering emergency medical care to the patient, she injured herself. (*Id.*)

After emergency medical personnel arrived and transported the patient to the hospital, Plaintiff informed her supervising nurse that the patient had likely been "improperly administered the wrong type of blood by the other nurse." (*Id.*) She also stated that she provided physical evidence of the likelihood of this improper administration to her supervisor. (*Id.*) Additionally, Plaintiff informed her supervisor that she had injured herself while performing emergency assistance to the patient, and she requested medical treatment. (*Id.*) The patient passed away while at the hospital. (*Id.*)

Plaintiff, her supervisor, and the nurse in charge of the patient were put on leave immediately after the incident. (*Id.* ¶ 6.) Sometime between March 22 and May 28, 2010, Defendant retained legal counsel, investigated the incident, and took Plaintiff's written statement. On May 28, 2010, Plaintiff's manager informed her that her "statement of the events

involving the patient were inconsistent with the statements given by the nurse and supervising nurse." (*Id.*) Plaintiff was requested "to stay at home for a few days pending her manager's receipt of further instruction from Defendant." (*Id.*)

While her manager told her that this leave was merely temporary, Plaintiff "was never allowed to return to work after May 28, 2010." (*Id.* ¶ 6-7.) Plaintiff states that Defendant never gave her notice of being formally placed on leave or terminated. (*Id.* ¶ 7.) Plaintiff avers that Defendant repeatedly ignored her requests for information regarding her job status. (*Id.*) Additionally, Plaintiff repeatedly asked for copies of the written statement she gave to Defendant's attorney, and Defendant ignored this request as well. (*Id.*) Plaintiff learned of her termination in June of 2010.[2] (*Id.*)

Plaintiff states that she "was wrongfully terminated by [Defendant] in an effort to protect itself from liability for the death of the patient who was improperly administered the wrong type of blood." (*Id.* ¶ 8.) Plaintiff was fired due to her firsthand knowledge of the improper medical treatment after bringing the information to Defendant's attention. (*Id.*) Plaintiff points to Defendant's policies regarding the inventory and control procedures of blood administration as the cause "in part" of the wrongful administration of blood. (*Id.*) As implemented, Defendant's policies "violated best practices and resulted directly in the wrongful administration of blood and ultimately in the death of its patient." (*Id.*)

---

[2] Paragraph 7 concludes with the following sentence: "[Plaintiff] learned of her termination from [Defendant] in June, [sic]." Because Plaintiff was placed on temporary leave on May 28, 2010, and the Complaint was filed on May 31, 2011, the Court assumes that Plaintiff meant to complete this sentence with the only date that would fit in this timeline of events: June of 2010.

Plaintiff alleges damages in the form of loss of wages and employee benefits; lack of medical treatment for an injury sustained while administering emergency medical care during the course and within the scope of her employment; emotional pain, suffering, and depression; and inability to gain employment with other health care providers. (*Id.* ¶ 9.) Plaintiff requests relief in the form of "compensat[ion] for employment discrimination[3] and her wrongful termination and retaliatory discharge," and future medical care for injuries sustained while on the job. (*Id.*, D.E. # 1-2 at 8.)

The Proposed Amended Complaint contains the following additional facts which the Court will take as true for purposes of this Motion. When Defendant hired Plaintiff on February 3, 2010, she had thirty years of nursing experience, had been employed as a manager in nursing, and was enrolled in a masters of nursing program. (Proposed Am. Compl. ¶ 4.) Defendant hired Plaintiff with the expectation that, after a brief training period in dialysis, Plaintiff would train patients in aspects of dialysis self care. (*Id.*)

On March 22, 2010, Plaintiff's supervisor instructed her to administer blood transfusions to dialysis patients present that day. (*Id.* ¶ 5.) Defendant generally received blood to be used for blood transfusions in Styrofoam containers from vendors. (*Id.*) That day, Defendant received several different patients' blood bags in a single Styrofoam container. Two pieces of

---

[3] The Court notes that this mention of employment discrimination in the Prayer for Relief is the only instance in which the Complaint mentions employment discrimination. The Proposed Amended Complaint does not contain a request for relief arising from employment discrimination, but it does state that Plaintiff asserts a cause of action for "the wrongful employment practices of [Defendant]." (Proposed Am. Compl. ¶ 3.) However, Plaintiff's Proposed Amended Complaint makes no other mention of any facts or conduct related to wrongful employment practices, and the Court finds that both the Complaint and the Proposed Amended Complaint have not stated a claim for employment discrimination.

information accompanied each blood bag: a name label identifying the patient who was to receive the blood and a tag requiring the signature of the person administering the blood transfusion. (*Id.*) The charge nurse was Plaintiff's supervisor. (*Id.*) Plaintiff saw her charge nurse sign all but one of the witness tags on the blood bags, which represented that she had personally witnessed the administration of the blood to the patients. (*Id.*) Plaintiff's charge nurse then distributed the blood bags to the dialysis patients, but she did not witness the administration of the blood to the patients. (*Id.*) Plaintiff told the charge nurse that the transfusion practices were improper and unusual based on her experience and jeopardized the patient. (*Id.*)

After a patient died from being administered the wrong blood type on March 22, 2010, Defendant retained legal counsel, investigated the incident, and took Plaintiff's written statement. (*Id.* ¶ 7.) Plaintiff told the investigating attorney that she had witnessed improper blood transfusion practices at Defendant's dialysis clinic. (*Id.*) She also told the investigating attorney that her supervisor acted improperly by signing the witness tags on the blood bags when the supervisor did not witness the administration of the blood transfusions. (*Id.*)

After the transfusion emergency discussed in both her original Complaint and Proposed Amended Complaint, Plaintiff notified her supervisor that she had injured herself in administering emergency aid to the injured patient. (*Id.* ¶ 12.) Defendant ignored this complaint. (*Id.*) When Plaintiff next returned to work, she reminded her supervisor that she was injured. (*Id.*) Defendant ignored this complaint as well. (*Id.*) Within days, Plaintiff was placed on leave, and her injury complaint was completely ignored. (*Id.*) Plaintiff believes that an additional motivating factor in Defendant's decision to terminate her was its desire to avoid

liability for Plaintiff's worker's compensation claim and possibly to exclude her from claims under the group health policy. (*Id.*)

The most notable differences between Plaintiff's Proposed Amended Complaint and her original Complaint lie in Plaintiff's assertion of a Cause of Action. Although Plaintiff still classes this suit as a "wrongful and retaliatory discharge" case in violation of "Tennessee common law and [Tenn. Code Ann.] § 50-1-304, in her Proposed Amended Complaint, Plaintiff asserts that "the method by which [Defendant] administered the transfusion of blood to its dialysis patients constituted a threat to the health of its patients, was false and deceptive, and violated the Joint Commission's National Patient Safety Goal .01.01.01 requiring at least two patient identifiers when providing care or treatment services." (*Id.* ¶ 10, 13.)

Plaintiff identifies a second cause of action: she alleges that Defendant's practices were in violation of the patient safety requirements found at 42 C.F.R. 493.1103. She notes that violation of one or more of these provisions could result in Defendant's loss of its certification as an approved provider of transfusion services and could have negative financial consequences for Defendant. (*Id.*)

Moreover, Plaintiff states that "[t]he actions of [Defendant's] charge nurse in falsely executing the tags on the blood bags violates § 1000-1-.04 and § 1000-1-.013 of the Tennessee Board of Nursing Rules and Regulations of Registered Nurses." (*Id.* ¶ 11.) The charge nurse was a supervisory employee, and her actions and conduct can be imputed to Defendant. (*Id.*) Plaintiff informed Defendant's district manager of the false, illegal, and dangerous transfusion practices of its supervisory employee, and she alleges that she was terminated for doing so. (*Id.*)

## **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 15(a)(2), a pleading may be amended "only by leave of court . . . and leave shall be freely given when justice so requires."[4] A motion to amend a complaint should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the nonmovant, or futility.[5] A trial court may appropriately assess the legal sufficiency of a contemplated amendment in considering the propriety of granting leave to amend under Fed. R. Civ. P. 15(a) and deny the motion if amendment would be futile.[6] Amendment would be futile if the proposed amended complaint would fail to state a claim under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). Because Defendant has argued that Plaintiff's Proposed Amended Complaint cannot withstand a motion to dismiss, the Court will proceed with Rule 15(a)(2)'s futility analysis and evaluate the Proposed Amended Complaint under Rule 12(b)(6).

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pled factual allegations of the complaint as true, construe those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the plaintiff.[7] However, legal conclusions "masquerading as factual allegations" or unwarranted factual inferences including "conclusory allegations" need not be accepted as true.[8] To avoid

---

[4]     Fed. R. Civ. P. 15(a)(2).

[5]     *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 519 (6th Cir. 2001).

[6]     *Id.* (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

[7]     *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2007).

[8]     *Id.*

7

dismissal under Rule 12(b)(6), "the complaint must contain either direct or inferential allegations" with respect to all material elements of the claim.[9]

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"[10]  Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[11]  To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[12]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13]

## ANALYSIS

Plaintiff has brought suit for retaliatory discharge under Tennessee common law and the Tennessee Public Protection Act ("TPPA").  Section 50-1-304 of the TPPA provides in pertinent part that "[n]o employee shall be discharged or terminated *solely* for refusing to participate in, or for refusing to remain silent about, illegal activities."[14]  This sole causation requirement puts a

---

[9]     *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

[10]     Fed. R. Civ. P. 8(a)(2).

[11]     *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1953 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

[12]     *Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 570.

[13]     *Iqbal,* 129 S. Ct. at 1949.

[14]     Tenn. Code Ann. § 50-1-304(b) (emphasis added).

higher burden on a plaintiff than does a claim under common law retaliation.[15]  The statute

defines "employee" as "[a] person employed by a private employer."[16]  Furthermore, "illegal

activities" for statutory retaliatory discharge purposes are those which are "in violation of the

criminal or civil code of this state or the United States or any regulation intended to protect the

public health, safety, or welfare."[17]  Accordingly, Tennessee's courts have identified four

elements of a prima facie case under section 50-1-304: "(1) status as an employee; (2) refusal to

participate in, or remain silent about, illegal activities; (3) the employer's discharge of the

employee; and (4) an exclusive causal relationship between his [or her] refusal to participate in

or remain silent about illegal activities and his termination by the employer."[18]

> The elements of common law retaliatory discharge are as follows:
>
> (1) that an employment-at-will relationship existed; (2) that the employee was
> discharged; (3) that the reason for the discharge was that the employee attempted
> to exercise a statutory or constitutional right, or for any other reason which
> *violates a clear public policy* evidenced by an *unambiguous constitutional,*
> *statutory, or regulatory provision*; and (4) that a *substantial factor* in the
> employer's decision to discharge the employee was the employee's exercise of
> protected rights or compliance with clear public policy.[19]

---

[15]     *Quinn-Glover v. Reg'l Med. Ctr. at Memphis*, No. W2011-00100-COA-R3-CV, 2012 WL 120209, at *7 (Tenn. Ct. App. Jan. 17, 2012) (citation omitted).

[16]     *Id.* § 50-1-304(a)(1)(B).  It is undisputed that Defendant is an employer as defined by § 50-1-304, and it is similarly undisputed that Plaintiff was an employee as defined by § 50-1-304.

[17]     *Id.* § 50-1-304(a)(3).

[18]     *Williams v. Greater Chattanooga Pub. Television Corp.*, 349 S.W.3d 501, 506 (Tenn. Ct. App. 2011) (quotation omitted).

[19]     *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 437-38 (Tenn. 2011) (emphasis added).

Thus, while the causation element carries a lesser burden at common law than under the statutory scheme, the other elements of a common law and statutory retaliatory discharge claim are similar. Furthermore, while the element of employment-at-will is unique to the common law retaliatory discharge claim,[20] under both the common law and the TPPA, "Tennessee courts have recognized that a plaintiff has indeed a formidable burden in establishing a prima facie case of retaliatory discharge."[21]

The Proposed Amended Complaint alleges that Plaintiff was a Defendant's employee and that she was discharged. Defendant does not challenge these elements. However, it does challenge the third element for violation of a public policy evidenced by a constitutional, statutory, or regulatory provision and the fourth element of causation.

## TPPA

The Court begins with Plaintiff's TPPA claim. Plaintiff's Motion to Amend the Complaint contains two paragraphs. The first indicated that Defendant's initial Motion to Dismiss was based on federal courts' plausibility pleading standards under *Twombly* and *Iqbal*.[22] The second stated that "the Court . . . ordered Plaintiff to, in essence, attempt to correct any pleading deficiencies by formally filing a Motion for Leave to Amend the Complaint."[23]

---

[20]    *Conley v. Yellow Freight Sys., Inc.*, 521 F. Supp. 2d 713, 730-31 (E.D. Tenn. 2007).

[21]    *Clark v. Hoops, LP*, 709 F. Supp. 2d 657, 670 (W.D. Tenn. 2010) (quotation and internal punctuation omitted).

[22]    (Pl.'s Mot. to Amend, D.E. # 15, at 1.)

[23]    (*Id.*) This statement mischaracterizes the Court's January 17, 2012 Order Denying Plaintiff's Motion to Amend the Complaint. (D.E. # 11.) In that Order, the Court noted that Plaintiff included two paragraphs requesting the Court to grant her leave to amend the Complaint in her Response to Defendant's Motion to Dismiss. The Court denied this request

Plaintiff did not provide a Memorandum in Support of her Motion; therefore, she did not seize

the opportunity to articulate why the Court should grant her leave to amend her Complaint under

Rule 15(a).  However, she did cite to three different bases in support of her retaliation claim

within the Proposed Amended Complaint.  The Court will address each of these bases in turn.

## Joint Commission's National Patient Safety Goal .01.01.01

In her Proposed Amended Complaint, Plaintiff asserts that "[t]he method by which

[Defendant] administered the transfusion of blood to its dialysis patients constituted a threat to

the health of its patients, was false and deceptive, and violated the Joint Commission's National

Patient Safety Goal .01.01.01 [("Goal .01.01.01")] requiring at least two patient identifiers when

providing care treatment or services."[24]  Although Plaintiff did not attach a copy of Goal

.01.01.01., the Court was able to find a version of it online.[25]  Aimed at "improv[ing] the

accuracy of patient identification," Goal .01.01.01 provides that hospitals "[u]se at least two

---

and gave Plaintiff fourteen days to "file an appropriate Motion to Amend the Complaint."  Thus, the Court did not order Plaintiff to correct any pleading deficiencies; rather, it instructed Plaintiff to file a proper motion under the Federal Rules of Civil Procedure and the Local Rules. Although Plaintiff's Motion to Amend the Complaint fails to comply with Local Rule 7.2(a)(1)'s requirement that motions be accompanied by a "supporting memorandum of facts and law (so identified) . . . and a certificate of consultation," Plaintiff has provided a copy of her Proposed Amended Complaint as requested by the Court, giving the Court a sufficient basis to evaluate Plaintiff's Motion under Rule 15(a).

[24]    (Proposed Am. Compl. ¶ 10.)

[25]    *See* http://www.jointcommission.org/assets/1/6/2011_NPSGs_HAP.pdf.  The Joint Commission is an independent non-profit organization seeking to improve health care standards.  *See* http://www.jointcommission.org/about_us/about_the_joint_commission_main.aspx.

patient identifiers when providing care, treatment, and services."[26]  It also lists two elements of

performance required to satisfy Goal .01.01.01.[27]

In its Response, Defendant argues that because Goal .01.01.01 is not a statutory or

regulatory provision, it cannot provide the requisite statutory or regulatory basis for Plaintiff's

whistleblower claim.[28]  Additionally, Defendant submits that the Proposed Amended Complaint

does not contain facts sufficient to show that its transfusion practices were inconsistent with

Goal .01.01.01.[29]  Although the Proposed Amended Complaint contains allegations that the

charge nurse did not witness the other nurses perform blood transfusions on March 22, 2010,

Goal .01.01.01 does not require two witnesses to blood transfusions.[30]  Rather, Defendant states

that it requires the use of two forms of patient identifiers, which are defined in Goal .01.01.01 as

different forms of patient-identifying information.[31]  Therefore, Defendant argues that Plaintiff

has failed to state a TPPA whistleblower retaliation claim under Goal .01.01.01.

The Court agrees, and it finds Defendant's first argument to be sufficient to dispose of

Plaintiff's Goal .01.01.01 claim.  Goal .01.01.01 is not a statute or regulation; instead, it is an

aspiration promulgated by an independent non-profit organization.  Goal .01.01.01 is not a civil

code provision, nor is it a regulation intended to protect the public health; instead, it is a mere

---

[26]     Goal .01.01.01, *available at* http://www.jointcommission.org/assets/1/6/
2011_NPSGs_HAP.pdf

[27]     *Id.*

[28]     (Def.'s Resp., D.E. # 16, at 9.)

[29]     (*Id.*)

[30]     (*Id.*)

[31]     (*Id.*)

aspirational goal. While compliance with aspirational goals geared toward increasing patient safety is laudable and certainly to be encouraged, failure to reach or comply with such a goal is not an "illegal activity" under the TPPA. Therefore, the Court finds that Goal .01.01.01 does not qualify as a statute or regulation under § 50-1-304, and Plaintiff has thus failed to satisfy the third element of her prima facie case of retaliatory discharge with respect to her Goal .01.01.01 claim. Accordingly, Plaintiff's Motion to Amend the Complaint to include a claim for retaliatory discharge under Goal .01.01.01 would be futile, as it would not withstand a motion to dismiss. Thus, Plaintiff's Motion is **DENIED** in this regard.

## 42 C.F.R. 493.1103

In her Proposed Amended Complaint, Plaintiff alleges that "[Defendant's] practices were in violation of the patient safety requirements set forth at 42 C.F.R. § 493.1103."[32] Section 493.1103 provides that "[a] facility that provides transfusion services must meet all of the requirements of this section and document all transfusion-related activities."[33] Although Plaintiff does not direct the Court's attention to one of § 493.1103's specific subsections, the Court believes that subsections (c) and (d) could be implicated by the Proposed Amended Complaint's facts. Subsection (c) governs blood and blood products storage and distribution and provides that "[t]he facility must establish and follow policies to ensure positive identification of a blood or blood product recipient."[34] Subsection (d) governs investigation of transfusion reactions and provides that "[t]he facility must have procedures for preventing transfusion reactions and when

---

[32]     (Proposed Am. Compl. ¶ 10.)

[33]     42 C.F.R. § 493.1103.

[34]     *Id.* § 493.1103(c)(2).

13

necessary, promptly identify, investigate, and report blood and blood product transfusion reactions to the laboratory and, as appropriate, to Federal and State authorities."[35]

Title 42 of the Code of Federal Regulations governs public health, and Subchapter G regulates Standards and Certification. Subpart 493 falls within Subchapter G and governs Laboratory Requirements. Subpart 493 "sets forth the conditions that all laboratories must meet to be certified to perform testing on human specimens under the Clinical Laboratory Improvement Amendments of 1988."[36] It applies to laboratories as defined in § 493.2 and laboratories "seeking payment under the Medicare and Medicaid programs."[37] Section 493.2 defines a laboratory as

> a facility for the biological, microbiological, serological, chemical, immunohematological, hematological, biophysical, cytological, pathological, or *other examination of materials derived from the human body for the purpose of providing information for the diagnosis, prevention, or treatment* of any disease or impairment of, or the assessment of the health of, human beings. These examinations also include procedures to determine, measure, or otherwise describe the presence or absence of various substances or organisms in the body. Facilities only collecting or preparing specimens (or both) or only serving as a mailing service and not performing testing are not considered laboratories.[38]

In its Response, Defendant argues that it did not violate § 493.1103, as the Proposed Amended Complaint does not allege that it is a "laboratory" as defined by § 493.2 or that it performs testing of the sort governed by § 493.1000.[39] Accordingly, Defendant implies that §

---

[35] *Id.* § 493.1103(d).

[36] *Id.* § 493.1.

[37] *Id.*

[38] *Id.* § 493.2 (emphasis added).

[39] (Def.'s Resp., D.E. # 16, at 10.)

14

493.1103 does not apply to it. Even assuming that Defendant is subject to § 493.1103, Defendant submits that the Proposed Amended Complaint does not provide enough detail about its practices or procedures to show that it violated § 493.1103.[40] Defendant narrowly interprets Plaintiff's Proposed Amended Complaint as containing allegations specific to the singular blood transfusion taking place on March 22, 2010, and argues that one event does not support the inference that Defendant failed to establish or follow appropriate blood transfusion identification policies.[41] Finally, Defendant submits that Plaintiff was required to report any illegal activity to a person or entity other than Defendant, and the Proposed Amended Complaint does not allege that she did so.[42]

At the outset, the Court notes that to qualify for whistleblower protection under the TPPA, a plaintiff is required to report the illegal activity to "some entity other than the person or persons who are engaging in the allegedly illegal activities."[43] Plaintiff's factual allegations indicate that she reported the illegal activities to the charge nurse—the same person who performed the illegal activities—and Defendant's investigating attorney, who functioned as Defendant's agent. Neither of these reports would qualify for whistleblower protection. However, buried in Paragraph 11, Plaintiff states that she "informed [Defendant's] district

_____

[40]     (*Id.* at 11.)

[41]     (*Id.* at 12.)

[42]     (*Id.*)

[43]     *Lawson v. Adams*, 338 S.W.3d 486, 493-94 (Tenn. Ct. App. 2010) (citations omitted). This reporting requirement appears to be applicable to both common law retaliatory discharge claims and TPPA claims. *See id.*; *Merryman v. Cent. Parking Sys., Inc.*, No. 01A01-9203-CH-00076, 1992 WL 330404, at *7 (Tenn. Ct. App. Nov. 13, 1992), *overruled on other grounds by Anderson v. Standard Register Co.*, 857 S.W.2d 555 (Tenn. June 28, 1993).

manager of the false, illegal, and dangerous transfusion practices of its supervisory employee."[44]

Accordingly, the Proposed Amended Complaint indicates that Plaintiff reported the alleged illegal activity to an individual other than the person engaging in the illegal activity, and the Proposed Amended Complaint is not deficient for this reason.

Moreover, the Court finds Defendant's narrow interpretation of Plaintiff's Proposed Amended Complaint unavailing. When evaluating a complaint under Rule 12(b)(6), this Court is to view all inferences in Plaintiff's favor. The Court finds Plaintiff's assertions regarding Defendant's blood transfusion-related policies and procedures ambiguous at best. It is unclear whether the procedures involving the Styrofoam container and the signature tags were typical of Defendant's blood transfusion practice or whether they were merely the procedures followed on the day of March 22, 2010. Moreover, Plaintiff's notification that "the blood transfusion practices she had witnessed at the dialysis clinic were improper"[45] is ambiguous as well: that statement could refer to the practices she witnessed on March 22, 2010, or the practices generally followed by Defendant. At this stage of litigation, the Court will adopt the inference most favorable to Plaintiff: the Court interprets the Proposed Amended Complaint as stating that she reported policies and practices followed on dates in addition to March 22, 2010.

But regardless of the interpretation given the assertions of Defendant's blood transfusion practices and procedures in the Proposed Amended Complaint, Plaintiff has failed to satisfy the third element of her prima facie case. Section 493.1103 is undoubtedly a "regulation intended to protect the public health, safety, or welfare" as required by Tenn. Code Ann. § 50-1-304. But for

---

[44]     (Proposed Am. Compl. ¶ 11.)

[45]     (Proposed Am. Compl. ¶ 7.)

an activity to qualify as an "illegal activity" under § 50-1-304(a)(3), the activity must be *in violation of* a regulation.  For a regulation to be violated, it must necessarily be applicable to the entity accused of violating it.

Here, Plaintiff has failed to allege that § 493.1103 applies to Defendant.  The Proposed Amended Complaint does not indicate that Defendant's dialysis clinic seeks payment under Medicare or Medicaid as required by § 493.2.  Therefore, as § 493.1103 applies only to "laboratories," Defendant would have to be a laboratory as defined by § 493.2 for any provisions of § 493.1103 to be triggered.  The Court finds that the Proposed Amended Complaint does not allege facts sufficient to indicate that § 493.1103 applies to Defendant.  At most, the Proposed Amended Complaint indicates that Defendant is a dialysis clinic, presumably performing both dialysis and blood transfusions.  But it does not indicate the character of Defendant's dialysis clinic beyond stating that it is a dialysis clinic.

While Defendant performs blood transfusions, Plaintiff does not allege facts indicating that Defendant tests or examines any materials "for the purpose of providing information for the diagnosis, prevention, or treatment of any disease or impairment of, or the assessment of the health of, human beings."  Moreover, even if Plaintiff had alleged facts sufficient to trigger § 493.1103, the Court notes that dialysis would necessarily include removing bodily toxins from the blood stream and that this removal is a treatment for kidney or renal failure.  However, that treatment would not be for the purpose of providing information for treatment of renal failure as required by § 493.2.  Accordingly, the Court finds that Defendant is not a "laboratory" as defined in § 493.2, and § 493.1103 does not apply to Defendant.  Therefore, Defendant could not

violate § 493.1103, and Plaintiff's report surrounding the events of March 22, 2010, would not be an "illegal activity" under the TPPA.

Accordingly, the Court finds that permitting Plaintiff to amend her Complaint to include a claim under § 493.1103 would be futile, as the amendment would not withstand a motion to dismiss. She did not plead facts sufficient to trigger § 493.1103's applicability to Defendant. Therefore, this portion of Plaintiff's Motion to Amend the Complaint is **DENIED.**

### Tennessee Board of Nursing Rules and Regulations of Registered Nurses §§ 1000-1-.04 and 1000-1-.13

In her Proposed Amended Complaint, Plaintiff states that "[t]he actions of [Defendant's] charge nurse in falsely executing the tags on the blood bags violates § 1000-1-.04 and § 1000-1-.13 of the Tennessee Board of Nursing Rules and Regulations of Registered Nurses [("the Rules and Regulations")].[46] The Rules and Regulations appear to be promulgated by the Tennessee Board of Nursing, which appears to be a division of the Tennessee Department of State.[47]

Section 1000-1-.04 covers several diverse topics including "discipline of licensees, unauthorized practice of professional nursing, civil penalties, screening panels, subpoenas, advisory rulings, declaratory orders, and assessment of costs."[48] The Court finds that the subsection most applicable to Plaintiff would be subsection (3) governing Responsibility. This subsection provides as follows:

---

[46]    (Proposed Am. Compl. ¶ 11.) Although they were not attached to the Proposed Amended Complaint, the Court was able to find a pdf version of the Rules and Regulations at http://www.state.tn.us/sos/rules/1000/1000-01.pdf.

[47]    *See* http://www.tn.gov/sos/rules/1000/1000.htm.

[48]    Rules and Regulations § 1000-1-.04.

18

> [e]ach individual is responsible for personal acts of negligence under the law. Registered nurses are liable if they perform delegated functions they are not prepared to handle by education and experience and for which supervision is not provided. In any patient care situation, the registered nurse should perform only those acts for which each has been prepared and has demonstrated ability to perform, bearing in mind the individual's personal responsibility under the law.[49]

Section 1000-1-.13 addresses "unprofessional conduct and negligence, habits, or other cause."[50] The most pertinent section appears to be subsection (1), which contains a laundry list of definitions for conduct which constitutes "unprofessional conduct, unfitness, or incompetency by reasons of negligence, habits[,] or other causes."[51] The Court has identified four actions which could be applicable to this case: (1) intentionally or negligently causing physical or emotional injury to a patient; (2) failing to maintain a record for each patient which accurately reflects the name and title of the nurse providing care; (3) failing to take appropriate action in safeguarding the patient from incompetent health care practices; and (4) engaging in acts of dishonesty which relate to the practice of nursing.[52] As the Court was unable to find any Tennessee cases applying the Rules and Regulations in a retaliatory discharge context, their application under the TPPA appears to be an issue of first impression.

The Tennessee Supreme Court has noted typical cases in which an illegal activity implicates a public policy concern: "cases in which the employee was discharged for refusing to commit perjury, for insisting on obeying a lawful subpoena, for refusing to seek to be excused from jury duty, for refusing to falsely certify the required testing of consumer products, for

---

[49]    *Id.* § 1000-1-.04(3)(a).

[50]    *Id.* § 1000-1-.13.

[51]    *Id.* § 1000-1-.13(1).

[52]    *Id.* § 1000-1-.13(1)(a), (b), (r), (w).

reporting consumer fraud violations," for reporting potentially life-threatening conditions caused by locking doors in a hotel laundry room, for filing a worker's compensation claim, and for reporting alleged sexual harassment.[53]  However, technical violations of regulations and complaints regarding internal management issues are not protected by the TPPA.[54]

In its Response, Defendant argues that the Proposed Amended Complaint does not provide the required specific statutory or regulatory basis for Plaintiff's claim under the Rules and Regulations.[55]  Additionally, Defendant states that the Rules and Regulations cited by Plaintiff "reveal no requirements or standards that would be violated by the conduct . . . attributable to the charge nurse."[56]  Defendant submits that the Proposed Amended Complaint's facts do not show that the charge nurse was negligent.[57]  Defendant argues that sweeping "thou shalt not be negligent" and "thou shalt not be dishonest" tenets such as those contained in the Rules and Regulations "do not qualify as the sort of 'clear' and 'unambiguous' law that can give rise to whistleblower protection."[58]

At the outset, the Court finds unavailing Defendant's argument that Plaintiff has not cited the Rules and Regulations with sufficient specificity.  The cases upon which Defendant relies

---

[53]    *Burnett v. Am.'s Collectibles Network, Inc.*, No. E2009-00591-COA-R3-CV, 2010 WL 669246, at *7 (Tenn. Ct. App. Feb. 25, 2010) (citing cases from the Tennessee Supreme Court and Tennessee Court of Appeals); *Franklin v. Swift Transp. Co., Inc.*, 210 S.W.3d 521, 527 (Tenn. Ct. App. 2006).

[54]    *Burnett*, 2010 WL 669246, at *7.

[55]    (Def.'s Resp., D.E. # 16, at 14.)

[56]    (*Id.* at 16.)

[57]    (*Id.* at 17.)

[58]    (*Id.* at 16-17.)

note that the mere reference to a statutory or regulatory scheme, such as a general argument that a defendant violated the tax code, does not satisfy the requirements of the TPPA. However, Plaintiff has identified two sections of the Rules and Regulations of which she reported violations. While the Court has had difficulty discerning to which specific subsections she is referring, her citation to two sections is sufficient to permit her claim to proceed past this initial threshold issue.

The Court finds that the Rules and Regulations as a whole are "regulations" as required by the TPPA. They are promulgated by the Tennessee Board of Nursing, a division of the Secretary of State; thus, they are regulations in the most basic sense of the term. They directly address a situation noted by the Tennessee Supreme Court—reporting potentially life-threatening conditions—which the Court finds to be an important public policy. The Rules and Regulations as a whole lay out appropriate conduct for registered nurses, who deal directly with patients in a variety of situations both in and out of the hospital setting. Therefore, the conduct outlined by the Rules and Regulations relates directly to healthcare professionals' work with ailing patients, and adherence to their provisions furthers the important public policy of preventing life-threatening conditions. Moreover, like criminal statutes and civil statutes and regulations, the Rules and Regulations provide for civil penalties and can result in fines up to $1,000.[59] Therefore, the Court finds that, in general, the Rules and Regulations cited by Plaintiff are "regulations" under section 50-1-304, and it now turns to the specific provisions cited by Plaintiff to determine whether they qualify as regulations intended to protect the public health.

---

[59] *See* Rules and Regulations § 1000-1-.04(6)(b).

The Court finds that Plaintiff's specific Rules and Regulations are too ambiguous to point to an intention to protect the public health. For example, § 1000-4-.01(3)(a), which addresses Responsibility, assigns personal responsibility to each individual committing personal acts of negligence under the law. This assignment of responsibility for personal negligence is covered by general negligence tort law principles, and it does not specifically relate to protecting the public health. Therefore, the Court finds that § 1000-4-.01(3)(a) cannot support a TPPA whistleblower claim.

Moreover, § 1000-1-.13(1) appears to be a list of definitions of unprofessional conduct, unfitness, or incompetency. This definitional section, with its laundry list of generally negligent conduct or impermissible conduct, does not appear to be intended to protect the public health. Section 1000-1-.13(1) does not prohibit the conduct listed; rather, it merely defines instances of negligence or other unprofessional actions. Without more, a list of definitions does not give rise to a regulation which points to a public policy of protecting the public health. That negligent healthcare is to be avoided is undisputed, but general prohibitions against acting negligently do not point to a public policy intended to protect the public health. Therefore, the Court finds that § 1000-1-.13(1) cannot support a TPPA whistleblower claim. Accordingly, Plaintiff's Motion to Amend the Complaint in this regard is **DENIED**.

As the Court has found that permitting Plaintiff to amend the Complaint as detailed in the Proposed Amended Complaint would be futile, the Court need not reach Defendant's causation argument.

### Motion to Dismiss Plaintiff's TPPA Claim in the Original Complaint

The Court now turns to Plaintiff's original Complaint.  A necessary element of all whistleblower retaliation claims under the TPPA is that the plaintiff report an "illegal activity" as defined by the TPPA.[60]  In her original Complaint, Plaintiff did not allege that she reported any form of "illegal activity" as defined by section 50-1-304.  She did not identify any federal or state criminal or civil statutes or regulations violated by Defendant.  Rather, the original Complaint notes that Defendant's policies "violated best practices and resulted directly in the wrongful administration of blood and ultimately in the death of its patient."[61]  Plaintiff does not direct the Court to where "best practices" are codified in either the state or federal statutes or regulations, and the Court does not find "wrongful administration of blood" to be an "illegal activity."  The original Complaint essentially argues that Plaintiff was fired for reporting Defendant's negligence, but negligence is not an "illegal activity."  While the blood bag mix-up resulted in the lamentable outcome of a patient losing his or her life, the Complaint does not allege that Plaintiff reported an illegal activity arising from that mix-up.  Therefore, Plaintiff's original Complaint has failed to set out the second element of a prima facie case under the TPPA.  Accordingly, the Court finds that the original Complaint fails to state a claim for violation of the TPPA.  Therefore, Defendant's Motion to Dismiss Plaintiff's TPPA claim is **GRANTED**.

## Common Law Retaliatory Discharge

In its Motion, Defendant argues that the elements of a TPPA retaliatory discharge claim and its common law counterpart are identical except for the higher causation required in the

---

[60]     *See* Tenn. Code Ann. § 50-1-304.

[61]     (Compl. ¶ 8.)

TPPA.[62]  Some Tennessee courts note this distinction,[63] but others state that "the first three elements of a statutory retaliatory discharge claim are identical to the elements of a cause of action under the common law."[64]  The Court disagrees with the latter assertion and finds that the elements of a TPPA whistleblower claim and a common law retaliatory discharge claim differ. Common law retaliatory discharge requires the plaintiff to show that he or she is an employee-at-will of the defendant,[65] but the TPPA merely requires the plaintiff to show that defendant employed him or her.

The Court finds that the distinction in the first element of the prima facie cases at common law and § 50-1-304, while minor on its face, has major consequences for Plaintiff's Proposed Amended Complaint.  As the Eastern District stated in *Conley*, "the [C]ourt is not at liberty to second guess the decisions of Tennessee's . . . court[s] with respect to Tennessee common law."[66]  In her Proposed Amended Complaint, Plaintiff does not allege that she was an at-will employee.  She states that she "was employed by [Defendant],"[67] but nowhere in the Proposed Amended Complaint does Plaintiff state that she was an at-will employee.  Therefore,

---

[62]     (Def.'s Resp., D.E. # 16, at 4.)

[63]     *See Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 862 (Tenn. 2002) (noting that "the elements of a typical common law retaliatory discharge claim [include] that an employment at-will relationship existed").

[64]     *Philips v. Anderson Cnty.*, No. E2009-01883-COA-R3-CV, 2010 WL 4514886, at *5 (Tenn. Ct. App. Nov. 10, 2010).

[65]     *See Conley*, 521 F. Supp. 2d at 730-31; *Gossett v. Tractor Supply Co., Inc.*, 320 S.W.3d 777, 781 (Tenn. 2010).

[66]     *Conley*, 521 F. Supp. 2d at 730-31.

[67]     (Proposed Am. Compl. ¶ 4.)

Plaintiff has failed to state this element of a prima facie case, and the Court finds that her Proposed Amended Complaint would not survive a motion to dismiss.

Furthermore, even if Plaintiff's assertion of her status as an employee were sufficient to satisfy the first element of a common law prima facie case, the Court finds that Plaintiff's reliance on Goal .01.01.01, 42 C.F.R. § 493.1103, and Rules and Regulations §§ 1000-1-.04 and 1000-4-.13 would be insufficient to support a common law retaliation claim. For the reasons previously discussed, none of these goals and regulations satisfy the third element of a common law prima facie case, as they do not point to a "clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provisions." Thus, Plaintiff's Motion in this regard is **DENIED**, and the Court need not reach Defendant's causation argument.

Moreover, Plaintiff's original Complaint is deficient for the same reason. Plaintiff's Complaint does not state that she was an at-will employee. Nor does it identify any statutes or regulations; instead, it relies on violations of "best practices." Just as these allegations are insufficient to sustain Plaintiff's TPPA claim, they do not satisfy the requirements of the prima facie case of common law retaliatory discharge. Therefore, the original Complaint fails to state a claim for common law retaliatory discharge. Accordingly, Defendant's Motion to Dismiss this claim is **GRANTED**.

## Worker's Compensation Retaliation Claim

The elements of a worker's compensation retaliation claim are as follows:

(1) The plaintiff was an employee of the defendant at the time of the injury; (2) the plaintiff made a claim against the defendant for worker's compensation benefits; (3) the defendant terminated the plaintiff's employment; and (4) the

claim for worker's compensation benefits was a substantial factor in the employer's motivation to terminate the employee's employment.[68]

In her Proposed Amended Complaint, Plaintiff alleges that she was injured while administering emergency aid to the injured patient on March 22, 2010.[69]  She also states that "an additional motivating factor in [Defendant's] decision to terminate her was its desire to avoid liability for [her] worker's compensation claim and possibly to exclude her from claims under the group health policy provided through [Defendant]."[70]  In her Prayer for Relief, Plaintiff notes that she was damaged because of a "[l]ack of medical treatment for an injury sustained while administering emergency aid to [Defendant's] patient during the course and scope of her employment."[71]

In its Response, Defendant argues that if these assertions constitute an attempt to state a claim for worker's compensation retaliation, that attempt fails.[72]  Defendant argues that the Proposed Amended Complaint's factual allegations fail to show that Plaintiff made a worker's compensation retaliation claim.[73]  Additionally, Defendant submits that the Plaintiff has failed to show causation, in that she was terminated nearly sixty days after sustaining an injury.[74]

---

[68]     *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558-59 (Tenn. 1993).

[69]     (Proposed Am. Compl. ¶ 12.)

[70]     (*Id.*)

[71]     (*Id.* ¶ 14.)

[72]     (Def.'s Resp., D.E. # 16, at 20.)

[73]     (*Id.*)

[74]     (*Id.* at 20-21.)

To the extent that Plaintiff has attempted to state a worker's compensation retaliation claim, the Court finds that that attempt is unsuccessful. The Proposed Amended Complaint does not allege that Plaintiff made a claim against Defendant for worker's compensation benefits. As such, Plaintiff has failed to set out the second element of a worker's compensation retaliation claim, and amending the Complaint to include one as contained in the Proposed Amended Complaint would be futile. Therefore, Plaintiff's Motion to Amend the Complaint in this regard is **DENIED**.

As such, the Court now turns to Defendant's Motion to Dismiss the original Complaint. In its Motion, Defendant notes that the Complaint "does not allege that Plaintiff made any kind of worker's compensation claim, nor is there any suggestion that Plaintiff's request for 'medical treatment' was a factor in Defendant's decision to terminate Plaintiff's employment."[75] Plaintiff did not respond to this argument in her Response.

The Court finds that Plaintiff's original Complaint has failed to state a worker's compensation retaliation claim for the same reason as her Proposed Amended Complaint: Plaintiff did not set out the second element of a worker's compensation retaliation claim, as she failed to allege that she made a claim against Defendant for worker's compensation benefits. Therefore, Defendant's Motion to Dismiss this claim is **GRANTED**.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Amend the Complaint is **DENIED** and Defendant's Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED.**

---

[75]    (Def.'s Mot. to Dismiss, D.E. # 4-1, at 5 n.3.)

**s/ S. Thomas Anderson**

S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: March 26th, 2012.